UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAWN WYGANT,

    *Plaintiff*,[1]

v.

MARY STRAND,
MICHIGAN DEPARTMENT
OF HUMAN SERVICES,

    *Defendants*.
_____/

CASE NO. 09-11684

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS**
(Doc. 15)

## I.   RECOMMENDATION

For the reason set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART** as follows:

1) that the motion be **GRANTED** as to all claims against Defendant Michigan Department of Human Services and that it be dismissed from the case;

2) that the motion be **GRANTED** as to the following claims against Defendant Mary Strand: (a) all state law claims based on absolute immunity; (b) the equal protection claim brought under 42 U.S.C. § 1983; and (c) the procedural due process claim brought under § 1983.

3) that the motion be **DENIED** as to Plaintiff's substantive due process claim under § 1983 brought against Defendant Mary Strand.

---

[1]Other Plaintiffs, who are minors, were dismissed from the case on February 3, 2010. (Doc. 10.)

## II. REPORT

### A. Introduction

By order of U.S. District Judge Thomas L. Ludington, this civil rights case was referred to the undersigned Magistrate Judge for general pretrial case management on May 18, 2008. The *pro se* complaint alleges that Defendant Michigan Department of Human Services ("DHS") and Defendant Mary Strand, a foster care social worker, violated Plaintiff's constitutional rights to due process and equal protection during the process that led to the termination of Plaintiff's parental rights. State law claims such as gross negligence, intentional infliction of emotional distress, false reporting of child abuse, failure to report child abuse, and falsely swearing under oath are also alleged. (Am. Compl., Doc. 3.)

Before the Court is Defendants' Motion to Dismiss Pursuant to Fed R Civ P 12(b)(6). (Doc. 15.) Although an order requesting a response to the motion on or before November 8, 2010, was filed and served upon Plaintiff Shawn Wygant (Doc. 16), Plaintiff has not filed any response to the motion. Upon review, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), the motion is ready for Report and Recommendation without oral argument.

### B. Background Facts and Plaintiff's Allegations

Plaintiff alleges that he was married to Susan Wygant (Susan) for ten years and that he is the biological father of four minor children who were born during the course that marriage. (Doc. 3 ¶¶ 4-5.) Plaintiff and Susan were divorced on July 23, 2003, by a judgment granting Plaintiff and Susan joint legal and physical custody of the four children. (*Id.* ¶ 5.) Plaintiff alleges that for four months commencing in November 2002, Susan influenced the children into fabricating stories of sexual misconduct by Plaintiff and showed the children sexually explicit material as part of the process. (*Id.* ¶¶ 6-7.) Plaintiff alleges that Susan was diagnosed with borderline personality

disorder and factitious disorder by proxy and that the allegations of sexual abuse were investigated and found to be unsubstantiated. (*Id.* ¶¶ 8-9.) A Child Protective Services ("CPS") investigation that began in August 2003 concluded that there was a preponderance of evidence of emotional harm to the children by Susan and a failure to protect the children from Susan by Plaintiff. (*Id.* ¶¶ 11-12.) As a result, a petition for child abuse/neglect was filed in Oakland County and, after a preliminary hearing, the children were made temporary wards of the court and Susan's mother, Sally Peck, was appointed as a foster care parent of the children. (*Id.* ¶¶ 13-15.)

Plaintiff further alleges that Defendant Mary Strand, a DHS employee, was assigned to supervise Plaintiff's children's case and that, per her recommendation, Plaintiff was allowed only limited and supervised visitation with his children. (*Id.* ¶¶ 18-20.) The visitation was supervised by another DHS worker, Elizabeth (Liz) Davis. (*Id.* ¶ 20.) After one of these supervised visitations held on December 10, 2003, Susan called Defendant Strand and Susan reported that one of the children had been sexually abused by Plaintiff during the supervised visit. (*Id.* ¶ 21.) Plaintiff avers that Defendant Strand should have known the allegation of sexual abuse was unfounded since Plaintiff was never alone with the children but was supervised by Ms. Davis the entire time. (*Id.* ¶¶ 22-23.) Instead of remarking on the impossibility of Susan's complaint, however, Plaintiff alleges that Defendant Strand "made a false report of child abuse against Shawn [Plaintiff] by filling out a DHS 3200 report stating that he sexually abused J.W. during the visit supervised by DHS worker Liz Davis." (*Id.* ¶ 24.) Although Susan had been the "referral source" for the investigation into the December 10, 2003, visitation, Defendant Strand's report covering the December 2003 time period denied that Susan was involved in any CPS investigation. (*Id.* ¶¶ 26-27.) A CPS investigative summary report dated August 31, 2004, however, clearly stated that Susan had been the referral source. (*Id.* ¶ 28.)

3

Plaintiff further avers that Defendant Strand testified in May 2006 that she was statutorily required to keep the referring source confidential. (*Id*. ¶ 30.) Plaintiff notes that the Michigan statute, Mich. Comp. Laws § 722.625, only extends confidentiality protection to those who acted in good faith, i.e., whether there is reasonable cause to suspect the abuse has occurred. (*Id*. ¶ 31.) Since Plaintiff contends that Defendant Strand did not have any reasonable cause to suspect abuse because Plaintiff was never alone with his children, he further contends that Defendant Strand was not entitled to keep the source confidential. (*Id*. ¶¶ 31-32.)

Plaintiff also alleges that Defendant Strand's report was misleading in describing the reported sexual abuse as "inappropriate behavior," which he notes could conceivably occur during supervised visitation, as opposed to sexual abuse which could not have occurred during the supervised visitation. (*Id*. ¶ 34.) Plaintiff further avers that Defendant Strand purposefully failed to disclose that the CPS investigation report concluded that there was no evidence of sexual abuse. (*Id*. ¶¶ 34-35.) Instead, Plaintiff contends that Defendant Strand used the phrase that the CPS "complaint is not supported by a preponderance of the evidence," which would give the complaint a higher level of credibility than if it were found to be without evidence entirely. (*Id.*) Plaintiff notes that these phrases are terms of art indicating different categories of misconduct and caseworker responsibilities. (*Id.*)

Plaintiff avers that the Oakland County Circuit Court entered an order giving Defendant Strand "authority to decide to let Susan move back in with the minor children" and that she exercised that authority and permitted Susan to move in with the children in early July 2004. (*Id.* ¶¶ 41-42.) At a hearing held on July 9, 2004, the court appointed a psychologist, Dr. Tracy Stulberg, to counsel Plaintiff and Susan pursuant to the parent-agency agreement. (*Id.* ¶ 42.) During this time, Plaintiff's visitation with his children was unsupervised but was limited to

4

daytime hours. (*Id*. ¶ 43.) In early August 2004, Susan filed for a personal protection order to prevent Plaintiff from attending the children's swimming classes. (*Id*. ¶ 43.) On August 17, 2004, a hearing was held and the request for a personal protection order was denied. (*Id*. ¶ 44.) After the hearing, Dr. Stulberg, Defendant Strand, Plaintiff and Susan negotiated a parenting time agreement that was to begin on August 23, 2004. (*Id.*) Plaintiff avers that on August 25, 2004, Defendant Strand "rescinded the parenting time agreement and forced the children to only have 3 hours once a week parenting time" despite the fact that Plaintiff had to travel from Oscoda, Michigan, to Farmington Hills, Michigan (approximately 420 miles round trip) to visit the children. (*Id*. ¶¶ 45-46.) Plaintiff further alleges that Susan forced one of the children to claim to have been sexually assaulted by Plaintiff at a meeting with Dr. Stulberg on August 31, 2004. (*Id.* ¶¶ 47.)

Plaintiff avers that Dr. Stulberg called Defendant Strand and told her that "the children were being coached by Susan to say that they were sexually abused and that she wanted to bring it to Mary's attention." (*Id*. ¶ 48.) Plaintiff contends that Defendant Strand falsely reported to CPS that the children were being sexually abused, that she suspended Plaintiff's parenting time, and that she referred the children to be interviewed "for sexual abuse by CPS worker Alison Scofield on September 14, 2004." (*Id*. ¶¶ 49-50.) Plaintiff alleges that the "CPS investigative report denied the referall [sic] based upon no evidence and the fact that Dr. Stulberg told the CPS worker that she believed the children were being coached by Susan." (*Id*. ¶ 52.)

Plaintiff indicates that although he had completed a parenting skills class with Catholic Social Services on September 24, 2004, Defendant Strand required both Plaintiff and Susan to complete a parenting skills class before the permanency and planning hearing set for October 12,

5

2004. (*Id.* ¶ 53.) After the hearing, Plaintiff was given visitation for three hours per week. (*Id.* ¶ 54.)

In October 2004, Defendant Strand asked Dr. Stulberg to report that the children were being sexually abused by Plaintiff so that she could make sure that Plaintiff's parental rights would be terminated. When Dr. Stulberg refused to make such an allegation, Defendant Strand fired Dr. Stulberg. (*Id.* ¶¶ 56-57.) Plaintiff supports these averments with a quotation from Dr. Stulberg's testimony given in a deposition taken in October 2007 wherein she stated:

> There is no way that family therapy should have stopped. Mary Strand just cancelled it and money was not the issue. Mary said: "I will not be sending them back to you. I am terminating therapy with you." This was right after she wanted me to write that [Plaintiff] was a sex offender and that he had molested [the children]. And that if I had said that she would have made sure that [Plaintiff's] rights were terminated. I made it very clear to her that we don't work that way and Strand got pissed. Any progress that was starting to be made, while I was holding [Plaintiff] accountable, Susan would then go back and complain to Strand because it wasn't working her way. This had nothing to do with [Plaintiff's] progress in family therapy. This is not why the contract was terminated. It was because I refused to do something that was unethical.

(*Id.* ¶ 58.) Plaintiff contends Defendant Strand falsely testified in May 2006 that Dr. Stulberg had been terminated because Plaintiff was not making progress. (*Id.* ¶ 59.)

Plaintiff contends Defendant Strand's actions caused "deprivation of their liberty, interests and civil rights to a parent-child relationship for over 34 months . . . ." (*Id.* at 1.) The 34-month period referred to appears to cover the events that occurred between August 2003 and May 2006. (*Id.* ¶¶ 11, 30.)[2] In addition, Plaintiff also alleges that Defendant Strand's actions caused his

---

[2] Plaintiff also alleges conduct occurring in December 2006 and September 2007, but that conduct involved a judge and a judicial referee, who are not named as defendants. (Doc. 3 ¶ 67.) Therefore, that conduct is irrelevant to Plaintiff's claims.

6

parental rights to be terminated in May 2006. (*Id*. ¶¶ 2, 63-68; Doc. 15 at 4.) Plaintiff seeks monetary damages and any other relief deemed appropriate by the Court. (Doc. 3 at 16.)[3]

### C. Defendants' Motion to Dismiss

Defendants' motion to dismiss asserts that Plaintiff's 42 U.S.C. § 1983 claims are barred by the applicable three-year statute of limitations, that the Michigan Department of Human Services is immune from suit under the Eleventh Amendment, that all of the claims in Plaintiff's amended complaint fail to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that Defendant Strand is immune from suit under common law absolute immunity, qualified immunity, Child Protection Law immunity, or governmental employee immunity. (Doc. 15.)

### 1. Motion to Dismiss Standards

In facing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41,

---

[3]Plaintiff also filed a suit against Susan Wygant, Molly June Wygant, and Shannon Wygant in the Michigan courts. That case was dismissed by the trial court for failure to comply with Michigan's pleading requirements and the dismissal was affirmed on appeal. *Wygant v. Wygant*, No. 28375, 2009 WL 3929954 (Mich. Ct. App. Nov. 19, 2009).

45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

The Supreme Court recently explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

8

**2.     Defendant Michigan Department of Human Services**

Regardless of the form of relief requested, the state and their departments are immune from suit in federal courts under the Eleventh Amendment unless the state has waived immunity or Congress has expressly abrogated that immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101, 104 S. Ct. 900, 79 L. Ed. 2d 1114 (1978); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Since Congress has not abrogated Eleventh Amendment immunity by statute nor did it do so under § 1983, *Hutzell v. Sayre*, 5. F.3d 996, 999 (6th Cir. 1993), and Michigan has not consented to suit, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), the Michigan Department of Human Services is entitled to Eleventh Amendment immunity and should be dismissed from this case. *See also Toliver v. Lutheran Soc. Servs.*, No. 07-14179, 2008 WL 126628, at *1 (E.D. Mich. Jan. 14, 2008) (dismissing Michigan DHS because it is immune from suit); *Zibbell v. Granholm*, No. 2:07-cv-96, 2007 WL 2438314, at *4 (W.D. Mich. Aug. 23, 2007) (dismissing Michigan DHS because immune from suit and because it is not a person who may be sued under § 1983).

**3.     Defendant Mary Strand**

**a.     Witness Immunity and the State Law Claim of Falsely Swearing Under Oath**

Plaintiff alleges a state law claim of falsely swearing under oath.[4]  Defendant Strand contends that Plaintiff cannot maintain such a claim. (Doc. 15 at 17-18.)

 I first note that although insurance carriers may claim an affirmative defense of false swearing by an insured, research has not revealed any independent tort in Michigan for "false

---

[4] Plaintiff also cites child abuse and child neglect as claims; however, the statutes cited require that the abuse or neglect be done by a parent, legal guardian or other person responsible for the child's welfare. (Doc. 3 at 2 n.4-5.) Since Defendant Strand does not fit any of the criteria, I suggest that those statutes not only fail to provide a claim, they also fail to impose any duty upon Defendant Strand.

9

swearing" in any other context. *See Mina v. Gen Star Indemnity Co.*, 555 N.W.2d 1 (Mich. Ct. App. 1996), *rev'd in part on other grounds*, 568 N.W.2d 80 (Mich. 1997).

Even if such a tort existed, I suggest that Defendant Strand[5] would be immune from it. "Witnesses who are an integral part of the judicial process 'are wholly immune from liability for the consequences of their testimony or related evaluations.'" *Maiden v. Roz wood*, 597 N.W.2d 817 (Mich. 1999). "Falsity or malice on the part of the witness does not abrogate the privilege." *Id.*[6] Federal law also provides for absolute witness immunity. *Briscoe v. LaHue*, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1982); *accord Chee v. Hawaii*, No. 08-cv-11416, 2008 WL 4185943, at *8 (E.D. Mich. Sept. 8, 2008). Therefore, I suggest that the false swearing claim be dismissed and that any portion of Plaintiff's claims resting on Defendant's testimony in court must also be dismissed.

   b.   **Immunity for State Law Claims**

Defendant Strand argues that she is absolutely immune under Michigan common law because of her position as a social worker, citing *Martin v. Children's Aid Soc.*, 544 N.W.2d 651, 655 (Mich. Ct. App. 1996). (Doc. 15 at 18.) In *Martin*, the Michigan Court of Appeals noted that "[a]lthough we have found no Michigan precedent regarding this question, we find convincing the [federal] decisions granting absolute immunity to social workers." *Id.* Although one might surmise from the above language that Michigan common law would likely continue to follow federal law on this topic, Michigan law has diverged from its federal roots. As to claims based on Michigan law, social workers enjoy a blanket absolute immunity that is undisturbed by allegations

---

[5]Since I recommend dismissal of Defendant Department of Human Services above, all references to "Defendant" from this point forward will refer to Defendant Mary Strand.

[6]I note that Defendants cite this case for the proposition that social workers are entitled to absolute immunity in general, regardless of the falsity or maliciousness of their statements or actions (Doc. 15 at 18); however, the quoted text applies only to witness immunity, not to common law immunity for social workers.

of bad faith and that is expressly distinguished from the less-than-absolute immunity (which is akin to prosecutorial immunity) provided for claims against social workers under federal law, i.e., § 1983. *See Richmond v. Catholic Social Services*, No. 246833, 2004 WL 1416266, at *2-3 (Mich. Ct. App. June 24, 2004); *Bielaska v. Orley*, Nos. 215286, 215287, 2001 WL 755921, at *3-4 (Mich. Ct. App. Feb. 9, 2001); *Recchia v. Kelly*, No. 213394, 2000 WL 33417337, at *2 (Mich. Ct. App. June 30, 2000). I therefore suggest that Plaintiff's state law claims of intentional infliction of emotional distress,[7] gross negligence, child neglect and child abuse[8] should all be dismissed for failure to state a claim upon which relief can be granted based on Defendant's absolute immunity.[9] [10]

---

[7]Even if Defendant were not immune, I suggest that Plaintiff has not alleged that he has suffered any emotional distress, let alone severe emotional distress. I note that Plaintiff did allege that "all four children have suffered severe emotional trauma and serious mental harm," but that does nothing to save his claim from dismissal. *See Dalley v. Dykema Gossett, PLLC*, 788 N.W.2d 679 (Mich. Ct. App. 2010) ("To establish a *prima facie* claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff.").

[8]As to Plaintiff's gross negligence claim, the "[Michigan] Supreme Court has ruled that there can be no gross negligence in the absence of a legal duty." *Becker-Witt v. Bd. of Examiners of Social Workers*, 663 N.W.2d 514, 518 (Mich. Ct. App. 2003). A "duty of care may derive from either a statute or 'the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his action as not to unreasonably endanger the person or property of others.'" *Id.* (citations omitted). Plaintiff cites violations of several statutes which he lists as separate claims, i.e., false reporting of child abuse and failure to report child abuse. (Doc. 3 at 2.) Plaintiff cites Mich. Comp. Laws § 722.633(5)(b), which criminalizes intentionally making a false report of child abuse, and § 772.633(1), which imposes civil liability on those who are required to report an instance of suspected child abuse or neglect and fail to do so. However, research has not revealed any case in the Michigan or federal courts which has imposed civil liability on a person who makes a false report under § 722.633(5)(b). Since Plaintiff's allegations center on false reporting rather than a failure to report, I suggest that this gross negligence claim may not have survived dismissal even if Defendant were not entitled to absolute immunity in Michigan.

[9]Alternatively, Defendant argues that she is entitled to the benefit of statutory immunity under the Child Protection Law. (Doc. 15 at 20.) Michigan law provides that:
> A person acting in good faith who makes a report, cooperation in an investigation, or assists in any other requirement of this act is immune from civil or criminal liability that might otherwise be incurred by that action. A person making a report or assisting in any other requirement of this act is presumed to have acted in good faith.

Mich. Comp. Laws § 722.625. A " person who has 'reasonable cause to suspect child abuse' is by definition 'acting in good faith' when reporting the suspicions." *Warner v. Mitts*, 536 N.W.2d 564, 566 (Mich. Ct. App. 1995). Immunity "extends to reports of 'suspected' child abuse regardless of the outcome of a subsequent investigation."

11

### c.     Whether a Constitutional Violation Has Been Averred Under § 1983

Plaintiff alleges that his civil rights pursuant to the Due Process and Equal Protection Clauses to maintain a parent-child relationship were violated throughout a 34-month period and, ultimately, when his parental rights were terminated. (Doc. 3 at 1, 15.) Since Plaintiff does not allege that he was intentionally discriminated against because of his membership in any protected class, I suggest that his equal protection claim should be dismissed for failure to state a claim. *See Village of Arlington Hts. v. Metro. Housing Dev. Corp.*, 429 U.S. 229, 265-66, 97 S. Ct. 441, 50 L. Ed. 2d 427 (1977); *Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir. 2000); *Gutierrez v. Lynch*, 826 F.2d 1524, 1538 (6th Cir. 1987).

With regard to Plaintiff's due process claim, he does not state whether it sounds in procedural or substantive due process. However, since Plaintiff's allegations indicate that he was provided with adequate procedures for redressing the wrongs, i.e., multiple hearings and an appeal, I suggest any procedural due process claim should also be dismissed for failure to state a claim.

---

*Id.* "'[G]ood faith' pertains to the existence of a reasonable suspicion, not the motive behind the decision to report." *Id.* at 560. In an unpublished decision, the Michigan Court of Appeals declined to hold professionals to a higher standard than lay persons when determining whether a defendant has acted in good faith. *Morris v. Arbanas*, No. 229938, 230561, 2002 WL 31424825, at *7 (Mich. Ct. App. Oct. 29, 2002). However, contrary to its holdings providing absolute immunity to social workers, at least one Michigan court has held that where professionals, such as caseworkers, commit a clear violation of the Child Protection Law, they are not acting pursuant to the law, and thus, are not entitled to the immunity provided therein. *KB v. Mills*, 639 N.W.2d 261, 268 (Mich. Ct. App. 2002) (holding caseworker was not entitled to immunity under child protection law where report of abuse was made by someone other than a doctor but medical evaluation was made without a court order or without the requisite showing under the statute that the child's health was seriously endangered and a court order could not be obtained.)

[10]Although Defendant alternatively argued that she is entitled to common law qualified or governmental immunity for the state law claims (Doc. 15 at 19-20), I suggest that she would not be so entitled. For a defendant to assert qualified immunity for intentional torts, she must show, among other elements, that her actions were undertaken in good faith, or were not undertaken with malice. *Odom v. Wayne County*, 760 N.W.2d 217 (Mich. 2008). This "good faith element of the *Ross* test is subjective in nature [and] [p]rotects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Id.* at 229. Plaintiff avers malice and thus Defendant would not appear to be eligible for qualified immunity at this motion to dismiss stage of the litigation where Plaintiff's averments are presumed to be true.

12

*See Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (noting that a plaintiff must plead and prove that the state remedies for redressing the wrong are inadequate).

As to Plaintiff's substantive due process claim, the right to family integrity or familial association is included in the Fourteenth Amendment substantive due process right of freedom of intimate association. *J.B. v. Washington County*, 127 F.3d 919, 927 (10th Cir. 1997). Federal courts "have recognized a protected right to familial association, and [have] allowed parents or their children to recover under § 1983 for alleged unconstitutional conduct primarily directed toward another family member[, but] have done so only where the plaintiffs have alleged a permanent, physical loss of association of an immediate family member as a result of unlawful state action." *Pittsley v. Warish*, 927 F.3d 3, 8 (1st Cir. 1991) (quoted in *Bukowski v. City of Akron*, 326 F.3d 702, 712 n.2 (6th Cir. 2003)). "Moreover, the Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). On the other hand, courts have held that there is no constitutionally protected right to visitation while children are temporarily housed, such as when they are in foster care. *Scrivner v. Andrews*, 816 F.2d 261, 263-64 (6th Cir. 1987) (cited in *Toliver v. Lutheran Soc. Servs.*, No. 07-14179, 2009 WL 211034, at * 1-2 (E.D. Mich. Jan. 27, 2009)). In addition, the "right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Watterson v. Page*, 987 F.2d 1, 9 (1st Cir. 1993).

"To recover under § 1983 for deprivation of a protected relationship, a plaintiff must prove that the governmental action was directed toward a protected aspect of that relationship and that any injury was not merely incidental to the action taken." *Walsh v. Erie Co. Dep't of Job & Family Servs.*, 240 F. Supp. 2d 731, 757 (N.D. Ohio 2003) (finding that since defendants' deprivation of a protected relationship was incidental to their violation of the plaintiffs' Fourth

13

Amendment rights, the plaintiffs did not have a cognizable claim for interference of parent-child relationship) (citing *Divergilio v. Skiba*, 919 F. Supp. 265, 269 (E.D. Mich. 1996)). "Government actions that burden the exercise of those fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest." *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000).[11]

Setting aside the allegations stemming from Defendant's court testimony because of immunity as discussed above, Plaintiff has averred that Defendant ignored Dr. Stulberg's professional opinion that "the children were being coached by Susan to say that they were sexually abused" and instead falsely reported to CPS that the children were being sexually abused. (Doc. 3 ¶¶ 48-50.) After an investigation, the "CPS investigative report denied the referall [sic] based upon no evidence and the fact that Dr. Stulberg told the CPS worker that she believed the children were being coached by Susan." (*Id*. ¶ 52.) Plaintiff also alleges that in October 2004, Defendant asked Dr. Stulberg to falsely report that the children were being sexually abused by Plaintiff so that she could make sure that Plaintiff's parental rights would be terminated and, when Dr. Stulberg refused to engage in unethical behavior, Defendant fired Dr. Stulberg. (*Id*. ¶¶ 56-57.) Although Plaintiff did not attach the excerpt from Dr. Stulberg's deposition, he provides a quotation from Dr. Stulberg supporting the contention. (*Id*. ¶ 58.)

I suggest that Plaintiff has averred governmental action directed toward a protected aspect of the familial relationship and that Plaintiff's injury – termination of his parental rights – was not merely incidental to the action taken. In addition, I suggest that the allegations are sufficient to

---

[11]Where a non-fundamental right is concerned, the plaintiff must allege "'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635-36 (6th Cir. 2007) (citations omitted); *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996).

14

indicate that Defendant's actions were not narrowly tailored to the compelling governmental interest in child protection. I therefore recommend that Defendant's motion to dismiss be denied as to Plaintiff's substantive due process claim.

### d. Immunity for Claims Brought Under § 1983

"'[S]ocial workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial duty and so are entitled absolute immunity.'" *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 421 (6th Cir. 2001) (quoting *Achterhof v. Selvaggio*, 886 F.2d 826, 830 (6th Cir. 1989)). "The analytical key to prosecutorial immunity . . . is advocacy – whether the actions in question are those of an advocate. By analogy, social workers are absolutely immune only when they are acting in their capacity as legal advocates initiating court actions or testifying under oath – not when they are performing administrative, investigative, or other functions." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000).

In *Holloway,* the Court held that absolute immunity did not apply because the "acts for which Brush is being sued – failing to notify the trial court that Plaintiff had made contact and wished to assert her parental rights, telling Plaintiff that her rights had been severed when they had not yet been, and withholding information that would have enabled Plaintiff to raise her rights in court before her rights were severed – do not come within that description." *Id.* The Court specifically noted that the caseworker's actions were not "testimony or recommendations given in court concerning the children's best interests as she saw the matter," because those actions would be entitled to absolute immunity. *Id.* at 776. *Accord Reguli v. Guffee*, 371 Fed. App'x 590, 599 (6th Cir. 2010).

Since the remaining allegations described above involve actions that go beyond testimony or recommendations given in court, I suggest that Defendant Strand is not entitled to absolute

15

immunity from Plaintiff's § 1983 substantive due process claim and, therefore, that Defendant's motion to dismiss should be denied with regard to this claim.

### e.  Statute of Limitations

I further suggest that Plaintiff's claims are not barred by the statute of limitations. The statute of limitations for civil rights actions is defined by state law. *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985). For civil rights suits filed in federal courts in Michigan, the statute of limitations is three years. Mich. Comp. Laws § 600.5805(10); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004).

Although statutes of limitations are governed by state law, the question of when the claims accrue remains one of federal law. *Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1107 (6th Cir. 1995). As a general rule, a cause of action "accrues" and the statute of limitations thereon begins to run when a plaintiff knows, or has reason to know through the exercise of reasonable diligence, of the injury that provides the basis for the claim. *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991). Continuing violations can extend the statute of limitations. Courts have held that "a continuing violation is occasioned by continued unlawful acts, not continual ill effects from an original violation." *Tolbert v. State Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). "[C]urrent effects alone cannot breathe life into prior [acts] . . . such effects in themselves have 'no present legal consequences.'" *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 127 S. Ct. 2162, 2169, 167 L. Ed. 2d 982 (2007).

In this case, Plaintiff alleges that Defendant's specific acts of wrongful conduct, not just the effects of the conduct, continued into May 2006. (Doc. 3 ¶¶ 59-64.) The Complaint in this case

16

was filed on May 1, 2009. Therefore, I suggest that Defendants' motion for dismissal on the basis of statute of limitations should be denied.

### 4. Conclusion

For the reasons stated above, I recommend that Defendants' motion to dismiss be granted as to all claims against the Defendant Michigan Department of Human Services based on Eleventh Amendment immunity and that it be dismissed from this case.

I further recommend that the motion to dismiss be granted as to the following claims against Defendant Mary Strand: (1) all state law claims based on absolute immunity; (2) the equal protection claim brought under § 1983; and (3) the procedural due process claim brought under § 1983. Finally, I recommend that Defendant Strand's motion to dismiss be denied as to Plaintiff's substantive due process claim brought under § 1983.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). See also 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).

17

The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                                  s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

                                                     CHARLES E. BINDER
Dated: January 18, 2011                          United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on C. Adam Purnell and Mark E. Donnelly, and served by first class mail on Shawn Wygant at 210 Canada St., Oscoda, MI, 48750-1601.

Date: January 18, 2011                           By     s/Patricia T. Morris
                                                                          Law Clerk to Magistrate Judge Binder