UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAWN WYGANT,

        Plaintiff,

                                                                       Case Number 09-11684-BC
v.                                                     Honorable Thomas L. Ludington

MARY STRAND, and MICHIGAN
DEPARTMENT OF HUMAN SERVICES,

        Defendants.
_____/

**OPINION AND ORDER ADOPTING JUDGE BINDER'S REPORT AND RECOMMENDATION, OVERRULING DEFENDANTS' OBJECTIONS, OVERRULING PLAINTIFF'S OBJECTIONS, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, AND RETURNING CASE TO JUDGE BINDER FOR CONTINUED PRETRIAL CASE MANAGEMENT**

        In his May 4, 2009 amended complaint, Plaintiff Shawn Wygant asserts claims for violations of 42 U.S.C. § 1983, the Fourteenth Amendment, and various state laws against Defendants Mary Strand and the Michigan Department of Human Services ("DHS"). Plaintiff alleges that Defendant Strand, who is a foster care social worker for Defendant DHS, willfully and maliciously interfered with his liberty interest in parenting his children, that Strand violated the Equal Protection Clause, and that Strand breached a host of state common law and statutory obligations to Plaintiff.

        On May 18, 2009, the case was referred to Magistrate Judge Charles E. Binder for pretrial case management. After Defendants filed their answer in September 2010, Judge Binder issued a notice directing Defendants to file an initial dispositive motion explaining why they are entitled to certain affirmative defenses identified in their answer, including qualified immunity, state law tort immunity, a jurisdictional defense, and a defense based on the statute of limitations. On October

8, 2010, Defendants filed a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c).[1] Defendants contend that Plaintiff's constitutional claims against DHS should be dismissed because it is entitled to Eleventh Amendment immunity; Plaintiff's constitutional claims are barred by the applicable three-year statute of limitations; Plaintiff's due process and equal protection claims do not state a claim upon which relief can be granted; Plaintiff's state law claims against Defendant Strand fail as a matter of law; Defendant Strand is entitled to qualified immunity as to Plaintiff's constitutional claims; and Plaintiff's state law claims against Strand are barred by state law immunity.

On January 18, 2011, Judge Binder issued a report recommending that the Court grant in part and deny in part Defendants' motion for judgment on the pleadings [Dkt. # 17]. Judge Binder recommended granting Defendants' motion with respect to all claims against DHS and the state-law claims and Equal Protection Clause claims against Strand. Judge Binder recommended denying the motion with respect to Plaintiff's Due Process claim against Strand for violation of Plaintiff's right to parent. Defendants filed an amended objection on January 31, 2011, challenging Judge Binder's recommendations with respect to Plaintiff's due process right to parent claim and the statute of limitations issues, suggesting that Judge Binder should have dismissed Plaintiff's complaint because he did not respond to Defendants' motion, and raising a jurisdictional issue for the first time.[2] Plaintiff filed objections on February 22, 2011, as well as additional exhibits on March 15, 2011 and

---

[1] Although the motion is identified as a motion to dismiss under Rule 12(b)(6), it must be construed as a Rule 12(c) motion for judgment on the pleadings because Defendants have already filed an answer to Plaintiff's complaint. *See* Fed. R. Civ. P. 12(b). The standard of review is the same. *See Lindsay v. Yates*, 498 F.3d 434, 437 & n.5 (6th Cir. 2007).

[2] It appears that the first set of objections were apparently based on a misreading of Judge Binder's report. They will not be considered in light of the amended objections.

June 6, 2011. Plaintiff objects to Judge Binder's conclusions with respect to the immunity issues and the merits of Plaintiff's state law claims. Neither party filed a response or reply to the other party's objections.

The district court will make a "de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *see also Thomas v. Arn*, 474 U.S. 140, 149–52 (1985). A party must file specific objections to the report or the party's right to further review will be waived. *Id.* Moreover, "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) (citations omitted).

For the reasons explained below, Judge Binder's report and recommendations will be adopted, both parties objections will be overruled, Defendants' motion for judgment on the pleadings will be granted in part and denied in part, and the case will be returned to Judge Binder for the continuation of pretrial proceedings.

**I.**

Judge Binder summarized the facts alleged in the complaint in his report.

> Plaintiff alleges that he was married to Susan Wygant (Susan) for ten years and that he is the biological father of four minor children who were born during the course [of] that marriage. Plaintiff and Susan were divorced on July 23, 2003, by a judgment granting Plaintiff and Susan joint legal and physical custody of the four children. Plaintiff alleges that for four months commencing in November 2002, Susan influenced the children into fabricating stories of sexual misconduct by Plaintiff and showed the children sexually explicit material as part of the process. Plaintiff alleges that Susan was diagnosed with borderline personality disorder and factitious disorder by proxy and that the allegations of sexual abuse were investigated and found to be unsubstantiated. A Child Protective Services ("CPS") investigation that began in August 2003 concluded that there was a preponderance of evidence of emotional harm to the children by Susan and a failure to protect the

children from Susan by Plaintiff. As a result, a petition for child abuse/neglect was filed in Oakland County and, after a preliminary hearing, the children were made temporary wards of the court and Susan's mother, Sally Peck, was appointed as a foster care parent of the children.

Plaintiff further alleges that Defendant Mary Strand, a DHS employee, was assigned to supervise Plaintiff's children's case and that, per her recommendation, Plaintiff was allowed only limited and supervised visitation with his children. The visitation was supervised by another DHS worker, Elizabeth (Liz) Davis. After one of these supervised visitations held on December 10, 2003, Susan called Defendant Strand and Susan reported that one of the children had been sexually abused by Plaintiff during the supervised visit. Plaintiff avers that Defendant Strand should have known the allegation of sexual abuse was unfounded since Plaintiff was never alone with the children but was supervised by Ms. Davis the entire time. Instead of remarking on the impossibility of Susan's complaint, however, Plaintiff alleges that Defendant Strand "made a false report of child abuse against Shawn [Plaintiff] by filling out a DHS 3200 report stating that he sexually abused J.W. during the visit supervised by DHS worker Liz Davis." Although Susan had been the "referral source" for the investigation into the December 10, 2003, visitation, Defendant Strand's report covering the December 2003 time period denied that Susan was involved in any CPS investigation. A CPS investigative summary report dated August 31, 2004, however, clearly stated that Susan had been the referral source.

Plaintiff further avers that Defendant Strand testified in May 2006 that she was statutorily required to keep the referring source confidential. Plaintiff notes that the Michigan statute, Mich. Comp. Laws § 722.625, only extends confidentiality protection to those who acted in good faith, i.e., whether there is reasonable cause to suspect the abuse has occurred. Since Plaintiff contends that Defendant Strand did not have any reasonable cause to suspect abuse because Plaintiff was never alone with his children, he further contends that Defendant Strand was not entitled to keep the source confidential.

Plaintiff also alleges that Defendant Strand's report was misleading in describing the reported sexual abuse as "inappropriate behavior," which he notes could conceivably occur during supervised visitation, as opposed to sexual abuse which could not have occurred during the supervised visitation. Plaintiff further avers that Defendant Strand purposefully failed to disclose that the CPS investigation report concluded that there was no evidence of sexual abuse. Instead, Plaintiff contends that Defendant Strand used the phrase that the CPS "complaint is not supported by a preponderance of the evidence," which would give the complaint a higher level of credibility than if it were found to be without evidence entirely. Plaintiff notes that these phrases are terms of art indicating different categories of misconduct and caseworker responsibilities.

Plaintiff avers that the Oakland County Circuit Court entered an order giving Defendant Strand "authority to decide to let Susan move back in with the minor children" and that she exercised that authority and permitted Susan to move in with the children in early July 2004. At a hearing held on July 9, 2004, the court

appointed a psychologist, Dr. Tracy Stulberg, to counsel Plaintiff and Susan pursuant to the parent-agency agreement. During this time, Plaintiff's visitation with his children was unsupervised but was limited to daytime hours. In early August 2004, Susan filed for a personal protection order to prevent Plaintiff from attending the children's swimming classes. On August 17, 2004, a hearing was held and the request for a personal protection order was denied. After the hearing, Dr. Stulberg, Defendant Strand, Plaintiff and Susan negotiated a parenting time agreement that was to begin on August 23, 2004. Plaintiff avers that on August 25, 2004, Defendant Strand "rescinded the parenting time agreement and forced the children to only have 3 hours once a week parenting time" despite the fact that Plaintiff had to travel from Oscoda, Michigan, to Farmington Hills, Michigan (approximately 420 miles round trip) to visit the children. Plaintiff further alleges that Susan forced one of the children to claim to have been sexually assaulted by Plaintiff at a meeting with Dr. Stulberg on August 31, 2004.

Plaintiff avers that Dr. Stulberg called Defendant Strand and told her that "the children were being coached by Susan to say that they were sexually abused and that she wanted to bring it to Mary's attention." Plaintiff contends that Defendant Strand falsely reported to CPS that the children were being sexually abused, that she suspended Plaintiff's parenting time, and that she referred the children to be interviewed "for sexual abuse by CPS worker Alison Scofield on September 14, 2004." Plaintiff alleges that the "CPS investigative report denied the referall [sic] based upon no evidence and the fact that Dr. Stulberg told the CPS worker that she believed the children were being coached by Susan."

Plaintiff indicates that although he had completed a parenting skills class with Catholic Social Services on September 24, 2004, Defendant Strand required both Plaintiff and Susan to complete a parenting skills class before the permanency and planning hearing set for October 12, 2004. After the hearing, Plaintiff was given visitation for three hours per week.

In October 2004, Defendant Strand asked Dr. Stulberg to report that the children were being sexually abused by Plaintiff so that she could make sure that Plaintiff's parental rights would be terminated. When Dr. Stulberg refused to make such an allegation, Defendant Strand fired Dr. Stulberg. Plaintiff supports these averments with a quotation from Dr. Stulberg's testimony given in a deposition taken in October 2007 wherein she stated:

> There is no way that family therapy should have stopped. Mary Strand just cancelled it and money was not the issue. Mary said: "I will not be sending them back to you. I am terminating therapy with you." This was right after she wanted me to write that [Plaintiff] was a sex offender and that he had molested [the children]. And that if I had said that she would have made sure that [Plaintiff's] rights were terminated. I made it very clear to her that we don't work that way and Strand got pissed. Any progress that was starting to be made, while I was holding [Plaintiff] accountable, Susan would then go back and complain to Strand because it wasn't working her way. This

-5-

> had nothing to do with [Plaintiff's] progress in family therapy. This is not why the contract was terminated. It was because I refused to do something that was unethical.

Plaintiff contends Defendant Strand falsely testified in May 2006 that Dr. Stulberg had been terminated because Plaintiff was not making progress.

Plaintiff contends Defendant Strand's actions caused "deprivation of their liberty, interests and civil rights to a parent-child relationship for over 34 months . . . ." The 34-month period referred to appears to cover the events that occurred between August 2003 and May 2006. In addition, Plaintiff also alleges that Defendant Strand's actions caused his parental rights to be terminated in May 2006. Plaintiff seeks monetary damages and any other relief deemed appropriate by the Court.

[Dkt. # 17] (citations and footnotes omitted).

## II.

Defendants first object to Judge Binder's conclusion that Plaintiff's complaint states a claim for violation of his substantive due process rights as a parent. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend 14. The Supreme Court has "long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, 'guarantees more than fair process.' The Clause also includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.' " *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997)). The "interests of parents in the care, custody, and control of their children" is one of the "fundamental liberty interests" protected by the substantive component of the Due Process Clause. *Troxel*, 530 U.S. at 65. "Governmental actions that infringe a fundamental right receive strict scrutiny. Otherwise, they receive rational-basis review, which requires them only to be 'rationally related to a legitimate state interest.' " *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 393 (6th Cir. 2005) (quoting *Seal v. Morgan*, 229 F.3d 567, 574–75 (6th Cir. 2000)).

Defendants contend that while Plaintiff's complaint pleads a procedural due process claim, Judge Binder erred in concluding that it pleads a substantive due process claim as well. Contrary to Defendants' assertion, however, Plaintiff identifies his substantive due process claim as early as the first paragraph of his amended complaint, where he alleges Defendants interfered with his protected liberty interest in the parent-child relationship. Pl.'s Amended Compl. ¶ 1 (citing *Daily v. Parker*, 152 F.2d 174 (7th Cir. 1946) (concluding children have a right to a relationship with their father, and a cause of action against any person who damages that relationship)). Moreover, although the complaint does not use the term "substantive due process," it relates numerous facts which put the Defendants on notice that his principal complaint is their alleged interference with his relationships with his children, and also identifies the alleged interference in his request for damages. *See* Pl.'s Amended Compl. Prayer for Relief. Accordingly, the complaint pleads a substantive due process claim for interference with parental rights.

Defendants further contend that even if the complaint pleads a substantive due process claim, Plaintiff does not allege the sort of egregious misconduct that can lead to an actionable due process claim. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845–50 (1998). Putting aside Defendants attempt to raise a new substantive argument in an objection to a report and recommendation, Plaintiff's complaint in this case does allege the egregious and arbitrary conduct on the part of a government official that "'shocks the conscience' and violates the 'decencies of civilized conduct.'" *Id.* at 846 (citation omitted). Plaintiff contends that he was the victim of an official who "abus[ed] her] power [and] employ[ed] it as an instrument of oppression." *Id.* That is all that is necessary given the standard of review that is to be applied.

In their second objection, Defendants contend that Judge Binder erred when he concluded

that Plaintiff's claims are not barred by the three-year statute of limitations applicable to § 1983 actions in Michigan. *See McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988). In his complaint, Plaintiff alleged that Defendant Strand engaged in a pattern of oppressive conduct beginning in 2003, and continuing through May of 2006 in an effort to terminate his parental rights. The alleged lies and false evidence culminated in a May 2006 state court decision terminating his rights. Defendant Strand's continued efforts to remove Plaintiff's parental rights, which continued into May 2006, provide a predicate for Plaintiff's cause of action within the three year period. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007) *superseded by statute on other grounds* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009). The fact that Defendant Strand apparently cannot be sued for her testimony at the May 2006 hearing, does not mean she cannot be held liable for the alleged pattern of wrongful conduct that led to the termination of Plaintiff's parental rights in May 2006.

In their third objection, Defendants contend that Judge Binder should have simply granted Defendants' motion to dismiss and dismissed Plaintiff's complaint with prejudice based on Plaintiff's failure to respond to Defendants' motion. Defendants note that Judge Binder ordered Plaintiff to respond, twice [Dkt. # 14, 16], and that the Court's Local Rules also require a response when a party opposes a motion, E.D. Mich. L.R. 7.1(c)(1). Although Plaintiff should have responded to the motion to dismiss, and the Court will expect responses that conform to the Local Rules in the future, dismissing Plaintiff's complaint with prejudice would have been too harsh a sanction. Under the circumstances, Judge Binder's course of action was appropriate.

Defendants' final objection asks the Court to consider a new argument that was not raised in Defendants' motion to dismiss. Defendants' suggest that the Court should sua sponte dismiss the

case under the *Rooker-Feldman* Doctrine, or based on res judicata or collateral estoppel. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Because that argument was not presented to Judge Binder and Plaintiff has not briefed it in response to Defendants' objections, it will not be considered. The Court's conclusion with respect to this objection does not foreclose consideration of the *Rooker-Feldman* argument by Judge Binder in the future.

Accordingly, Defendants' objections are overruled.

### III.

Plaintiff first objects to Judge Binder's conclusion that DHS is entitled to sovereign or Eleventh Amendment immunity. As Plaintiff emphasizes, the Eleventh Amendment does not explicitly bar suits against a state by a citizen of that state. The Eleventh Amendment only prohibits suits against a state by a citizen of a different state. Nevertheless, the Supreme Court has held that states are entitled to sovereign immunity, and therefore may not be sued by their own citizens unless the state consents or Congress specifically abrogates the state's immunity. *Hans v. Louisiana*, 134 U.S. 1 (1890). This concept is often referred to as Eleventh Amendment immunity even though the text of the Eleventh Amendment does not, on its face, appear to be implicated. *See Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). As the Court first recognized in *Hans*, "the Eleventh Amendment was important not merely for what it said but for what it reflected: a consensus that the doctrine of sovereign immunity . . . was part of the understood background against which the Constitution was adopted, and which its judicial provisions did not mean to sweep away." *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 31–32 (1989) (Scalia, J., concurring in part and dissenting in part).

In his first objection, Plaintiff presents a variety of policy arguments questioning the wisdom of extending the Eleventh Amendment to bar suits against a particular state by a citizen of that state. After all, reasonable people can, and do, disagree about the wisdom of the *Hans* decision and its progeny. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 248–49, 301 (1985) (Brennan, J., dissenting) (citing David L. Shapiro, *Wrong Turns: The Eleventh Amendment and the* Pennhurst *Case*, 98 Harv. L. Rev. 61 (1984)). The fact remains, however, that this Court is obligated to follow the decisions of the United States Supreme Court and the Sixth Circuit Court of Appeals. Those decisions mandate immunity for DHS. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–99 (1984); *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993). Accordingly, Plaintiff's first objection is overruled.[3]

Plaintiff next objects to Judge Binder's conclusion that there is no tort for "false swearing under oath" in Michigan, and even if there were, Strand cannot be sued for the testimony she provided in court. Plaintiff now contends that his claim for "false swearing under oath" was intended as an abuse of process claim, and points to a decision from a California court suggesting that witness immunity "dissolves when the witness has engaged in a tortious course of conduct." The objection will be overruled. Plaintiff's complaint does not identify an abuse of process claim, and neither the Defendants nor the Court were required to guess at his intentions. Moreover, Michigan law provides near absolute immunity for witnesses testifying in court. "Falsity or malice

---

[3] Plaintiff's first objection also contains a discussion of the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), under the heading "gross negligence." The discussion focuses on the standards for municipal liability under § 1983. In light of the Court's decision with respect to sovereign immunity, it is not necessary to consider municipal liability. It is, however, unlikely that Plaintiff would be able to demonstrate an unconstitutional policy or custom.

on the part of the witness does not abrogate the privilege." *Maiden v. Rozwood*, 597 N.W.2d 817, 830 (Mich. 1999). A California decision to the contrary does not alter the Michigan rule.

Plaintiff next objects to Judge Binder's conclusion that all of Plaintiff's state law claims against Strand should be dismissed because social workers in Michigan enjoy absolute immunity from tort liability under Michigan common law. Specifically, Plaintiff contends that Judge Binder misinterpreted the Michigan Court of Appeals decision in *Martin v. Children's Aid Society*, 544 N.W.2d 651 (Mich. Ct. App. 1996). There was no error in Judge Binder's analysis. After reviewing *Martin* and subsequent decisions by the Michigan Court of Appeals, it is apparent that social workers in Michigan enjoy absolute immunity from suit in state courts based on their participation in the state court procedures for removing a child from her parents control and terminating parental rights. *Id.* at 96–98; *see also Beauford v. Lewis*, 711 N.W.2d 783, 786 (Mich. Ct. App. 2005); *Thomas v. St. Vincent & Sarah Fisher Cntr.*, No. 03-73002, 2006 WL 2418974, at *7–9 (E.D. Mich. Aug. 21, 2006). Immunity for social workers is absolute in situations such as this where the alleged liability is predicated on the assistance the social worker provided to the probate court charged with determining whether or not the child should be permitted to remain with his or her parents.[4] Accordingly, Plaintiff's final objection will be overruled.

**IV.**

After entry of this opinion and order, the only remaining claim is Plaintiff's due process

---

[4] Notably, it appears that immunity for social workers under Michigan law is more protective than the immunity provided by federal law. Social worker immunity under federal law is limited to situations where the social workers are acting in a judicial or prosecutorial capacity as opposed to an administrative or investigative capacity. *See Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 422 (6th Cir. 2001); *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000). Thus, although Strand is immune under state law, she may not be under federal law.

claim against Defendant Strand for violation of his right to parent. The case remains on referral to Judge Binder for continued management of pretrial proceedings, including, but not limited to, the jurisdictional issues raised for the first time in Defendant Strand's objections.

Accordingly, it is **ORDERED** that Judge Binder's report and recommendation [Dkt. # 17] is **ADOPTED**.

It is further **ORDERED** that Defendants' objections [Dkt. # 18, 19] are **OVERRULED**.

It is further **ORDERED** that Plaintiff's objections [Dkt. # 24, 25, 29] are **OVERRULED**.

It is further **ORDERED** that Defendants' motion to dismiss [Dkt. # 15] is **GRANTED IN PART AND DENIED IN PART**. All claims against DHS are dismissed, and all claims against Strand are dismissed except for the due process claim brought pursuant to § 1983.

It is further **ORDERED** that this case is **RETURNED** to Judge Binder for continued pretrial case management pursuant to the earlier order of reference [Dkt. # 4].

                                                       s/Thomas L. Ludington  
                                                       THOMAS L. LUDINGTON  
                                                       United States District Judge

Dated: August 8, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 8, 2011.

                              s/Tracy A. Jacobs  
                              TRACY A. JACOBS